**LAW OFFICE OF FRANK LAWRENCE**
Frank Lawrence (CA Bar No. 147531)
578 Sutton Way, No. 246
Grass Valley, California 95945
frank@franklawrence.com
Tel. (530) 478-0703
Fax (530) 478-0723

*Attorney for Defendants San Manuel Band of*
*Mission Indians, San Manuel Indian Bingo and Casino*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH HARRIS,<br><br>              Plaintiff,<br><br>          vs.<br><br>SAN MANUEL BAND OF MISSION INDIANS, SAN MANUEL INDIAN BINGO AND CASINO, and DOES 1 through 10, inclusive,<br><br>              Defendant. | Case No. 5:14-CV-02365 SJO<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:       May 4, 2015<br>Time:       10:00 a.m.<br>Judge:      Hon. S. James Otero<br>Courtroom: 1 |

## **Table of Contents**

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    The Tribe. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    The Indian Gaming Regulatory Act. . . . . . . . . . . . . . . . . . . . . . . . 2

    C.    The Tribal-State Gaming Compact. . . . . . . . . . . . . . . . . . . . . . . . 3

    D.    San Manuel Indian Bingo & Casino. . . . . . . . . . . . . . . . . . . . . . . 4

    E.    The San Manuel Gaming Facility Tort Liability Ordinance. . . . . . . 5

    F.    The Tribe's Department of Public Safety. . . . . . . . . . . . . . . . . . . . 7

    G.    Plaintiff's Employment, Termination, and Appeal. . . . . . . . . . . . . 9

III.  DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.    Plaintiff Bears the Burden of Establishing Jurisdiction. . . . . . . . . 10

    B.    California's Employment Laws Do Not Apply to the Tribe on its Reservation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    C.    Tribal Sovereign Immunity May Only Be Waived by Express and Unequivocal Terms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    D.    The Compact is Only Enforceable by the State and Tribe. . . . . . . 16

    E.    The Tribe's Gaming Facility Tort Liability Ordinance Does Not Afford Plaintiff Any Relief. . . . . . . . . . . . . . . . . . . . . . . . . . 18

    F.    Plaintiff's Theory Would Render The State of California a Necessary and Indispensable Party under Rule 19. . . . . . . . . . . . . 19

IV. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ii

1

2

## **TABLE OF AUTHORITIES**

3

## **CASES**

4

A.K. Management Company v. San Manuel Band of Mission Indians,

5

   789 F.2d 785 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

6

Allen v. Gold Country Casino, 464 F.3d 1044 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . 13, 18

7

Alvarado v. Table Mountain Rancheria, 509 F.3d 1008 (9th Cir. 2007). . . . . . . . . . . . . . 13

8

American Greyhound Racing, Incorporated v. Hull, 305 F.3d 1015 (9th Cir. 2002). . . . . . . . 20

9

American Vantage Cos., Incorporated v. Table Mountain Rancheria,

10

   292 F.3d 1091 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11

Baker v. United States, 817 F.2d 560 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . 14

12

Block v. North Dakota, 461 U.S. 273 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

13

California ex rel. Department of Fish and Game v. Quechan Tribe of Indians,

14

   595 F.2d 1153 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

15

California v. Cabazon Band, 480 U.S. 202 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

16

Casino Resource Corporation v. Harrah's Entertainment, Inc.,

17

   243 F.3d 435 (8th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 19

18

Chemehuevi Indian Tribe v. California Board of Equalization,

19

   757 F.2d 1047 (9th Cir. 1985), rev'd on other grounds, 474 U.S. 9 (1985). . . . . . . . . . . 13

20

Clinton v. Babbitt, 80 F.3d 1081 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . 20

21

Demontiney v. United States, 255 F.3d 801 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . 13

22

Dewberry v. Kulongoski, 406 F.Supp.2d 113 (D. Or. 2005). . . . . . . . . . . . . . . . . . . . . 20

23

Enterprise Management Consultants, Incorporated v. Hodel,

24

   883 F.2d 890 (10th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

25

Federal National Mortg. Association v. LeCrone, 868 F.2d 190 (6th Cir. 1989). . . . . . . . . . 15

26

Gaming Corporation of America v. Dorsey and Whitney, 88 F.3d 536 (8th Cir.1996). . . . . . . . 3

27

28

Garcia v. Akwesasne Housing Auth., 268 F.3d 76 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . 15

Hill v. Rincon Band of Indians, 2007 WL 2429327. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Ingrassia v. Chicken Ranch Bingo and Casino,

    676 F.Supp.2d 953 (E.D. Cal. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Keitt v. WCAB, 2012 WL 1511707 (4th DCA April 18, 2012).. . . . . . . . . . . . . . . . . . . . . 18

Kescloli v. Babbitt, 101 F.3d 1304 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. King, 395 U.S. 1 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Kiowa Tribe of Oklahoma v. Manufacturing Techs., Inc.,

    523 U.S. 751 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Kokkenen v. Guardian Life Insurance Company, 511 U.S. 375 (1994). . . . . . . . . . . . . . . . 10

Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton,

    327 F.Supp.2d 995 (W.D. Wisc. 2004), aff'd 422 F.3d 490 (7th Cir. 2005). . . . . . . . . . . . 20

Lane v. Peña, 518 U.S. 187 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Lomayaktewa v. Hathaway, 520 F.2d 1324 (9th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . 20

Long v. Chemehuevi Indian Reservation, 115 Cal. App.3d 853 (4th DCA 1981). . . . . . . . . . 14

McClanahan v. State Tax Commission of Arizona, 411 U.S. 164 (1973). . . . . . . . . . . . . . . . 11

McClendon v. United States, 885 F.2d 627 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . 15

McDonald v. Illinois, 557 F.2d 596 (7th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Minnesota v. United States, 305 U.S. 382 (1939). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Montana v. Gilham, 133 F.3d 1133 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

New Mexico v. Mescalero Apache Tribe, 462 U.S. 324 (1983). . . . . . . . . . . . . . . . . . 12, 18, 19

Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe,

    498 U.S. 505 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Pan American Company v. Sycuan Band of Mission Indians,

    884 F.2d 416 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Pennhurst State School and Hospital v. Halderman, 465 U.S. 89 (1984). . . . . . . . . . . . . . . . 16

iv

<u>Pink v. Modoc Indian Health Project, Incorporated</u>, 157 F.3d 1185 (9th Cir. 1998). . . . . . . . . .  14

<u>Pit River Home and Agric. Cooperative Association v. United States</u>,

    30 F.3d 1088 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  <u>14</u>

<u>Puyallup Tribe, Incorporated v. Department of Game</u>, 433 U.S. 165 (1977).. . . . . . . . . . . . . .  <u>13</u>

<u>Ramey Construction v. Apache Tribe of Mescalero Reservation</u>,

    673 F.2d 315 (10th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  <u>15</u>

<u>Rice v. Olson</u>, 324 U.S. 786 (1945). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  <u>11</u>

<u>Rumsey Indian Rancheria of Wintun Indians v. Wilson</u>, 64 F.3d 1250 (9th Cir. 1994). . . . . . .  <u>12</u>

<u>Rupp v. Omaha Indian Tribe</u>, 45 F.3d 1241 (8th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . .  <u>15</u>

<u>Santa Clara Pueblo v. Martinez</u>, 436 U.S. 49 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  <u>13</u>

<u>United States v. Shaw</u>, 309 U.S. 495 (1940). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  <u>16</u>

<u>Street Clair v. City of Chico</u>, 880 F.2d 199 (9th Cir.1989). . . . . . . . . . . . . . . . . . . . . . . . . . .  <u>11</u>

<u>Terrell v. United States</u>, 783 F.2d 1562 (11th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  <u>15</u>

<u>United States v. Testan</u>, 424 U.S. 392 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  <u>13</u>

<u>The Kansas Indians</u>, 72 U.S. 737 (1867). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  <u>11</u>, <u>12</u>

<u>Thornhill Public Company v. Tel. and Elec. Corporation</u>, 594 F.2d 730 (9th Cir. 1979). . . . . .  <u>11</u>

<u>Three Affiliated Tribes of the Ft. Berthold Reservation v. Wold Engineering</u>,

    476 U.S. 877 (1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  <u>15</u>

<u>Wendt v. Smith</u>, 273 F. Supp. 2d 1078 (C.D. Cal. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

<u>United States v. White Mountain Apache Tribe</u>, 537 U.S. 465 (2003). . . . . . . . . . . . . . . . . . .  <u>15</u>

<u>Worcester v. Georgia</u>, 31 U.S. 515 (1832). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  <u>11</u>

## STATUTES

25 U.S.C. § 2701.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  <u>2</u>, <u>3</u>

25 U.S.C. § 2702(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  <u>4</u>

25 U.S.C. § 2710(b)(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  <u>4</u>, <u>5</u>, <u>6</u>, <u>7</u>, <u>10</u>

v

25 U.S.C. § 2710(d)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

25 U.S.C. § 2710(d)(3)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

25 U.S.C. § 2710(d)(8)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

65 Fed. Reg. 31189, 31189 (May 16, 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

80 Fed. Reg. 1492-02 (Jan. 14, 2015).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Cal. Gov't Code § 12012.5(a)(31). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

vi

# I. INTRODUCTION

This Court lacks jurisdiction over this case because defendants San Manuel Band of Mission Indians ("Tribe") and San Manuel Indian Bingo and Casino ("Casino") posses sovereign immunity.  The California employment law plaintiff relies on does not apply to the Tribe on its Reservation.  Plaintiff's reliance on the Tribe's Gaming Compact with California is also unavailing.  The Compact does not afford plaintiff a private right of action, and its limited immunity waiver only applies to disputes over the Compact between the Tribe and State.  Moreover, the Compact expressly precludes any third party suits, and bars any claims for monetary damages.  The Tribe's Gaming Facility Tort Liability Ordinance is of no use to plaintiff, for a host of reasons discussed below.  Finally, Plaintiff's theory would render the State of California a Required party under Rule 19.

For these reasons, defendants respectfully request that this Court dismiss this action with prejudice.

# II. BACKGROUND

## A.    The Tribe

The San Manuel Band of Mission Indians is a federally recognized Indian Tribe, located on the San Manuel Indian Reservation in San Bernardino County, California ("Reservation").  *See* 80 Fed. Reg. 1492-02 (Jan. 14, 2015) (listing federally recognized tribes); Declaration of Tribal Chairwoman Lynn Valbuena ("Valbuena Dec.") ¶ 2.  The Reservation was established in 1891 and presently is approximately 950 acres in size.  The Tribe's governing body is the General Council, consisting of tribal members 21 years of age and older, and from which is elected a Business Committee.  Only tribal members may serve on the Business Committee.  *See* Valbuena Dec. at ¶¶ 3-5.

The Tribe's governmental departments include its Fire Department, Department of Health Services, Department of Planning and Development,

1

Education Department, Department of Public Affairs, Gaming Commission, Finance Department, Tribal Court system, and the Department of Public Safety. Business Committee members interview and hire tribal government department heads.  Tribal enterprises include the San Manuel Entertainment Authority ("Authority"), an unincorporated instrumentality of the Tribe, doing business as the San Manuel Indian Bingo & Casino ("Casino"), among others.  *See* Valbuena Dec. ¶ 6.

The Tribe's Reservation is home to tribal member residences, the tribal fire station, the Tribal Court, the San Manuel Indian Bingo and Casino, parking structures, a community center which, among other things, houses the tribal government, and other tribal governmental facilities and functions.  Part of the Reservation is open to the public and part is for the exclusive use of the Tribe, its members and their guests.  The secured part includes the residential area, the community center, and other tribal governmental facilities and functions.  Access to the secured part requires going through a guard gate manned by employees of the Tribe's Department of Public Safety.  *See* Valbuena Dec. ¶ 5; Lawrence Dec. Exhibit 1 at pp. 6, 13-14; Klein Dec. ¶ 12.

**B.  The Indian Gaming Regulatory Act**

Congress enacted the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq.*, in 1988, authorizing tribes to engage in governmental gaming to "promot[e] tribal economic development, self-sufficiency and strong tribal government[]." *Id*. at § 2702(1).  IGRA generally requires that casino gaming be conducted pursuant to a negotiated intergovernmental agreement called a tribal-state gaming compact.  *Id.* at § 2710(d)(1)(C).  Tribal gaming net revenues may only be used for the governmental purposes enumerated in IGRA.  *See id.* §§ 2710(b)(2)(B), 2710(b)(3).  IGRA preemptively regulates the field of Indian

gaming.  *See Casino Resource Corp. v. Harrah's Entertainment, Inc.*, 243 F.3d 435, 437 (8th Cir. 2001) ("Congress, by enacting IGRA, has established the preemptive balance between tribal, federal, and state interests in the governance of gaming operations on Indian lands"); *Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536, 548-49 (8th Cir.1996); 25 U.S.C. § 2710(d)(3)(C).

## C.  The Tribal-State Gaming Compact

In 1999, the Tribe, along with 60 other California tribes, entered into a gaming compact with the State of California (the "1999 Compact"), which was ratified by the California legislature on October 10, 2000.  *See* Cal. Gov't Code § 12012.5(a)(31).  *See* Complaint Ex. 1; Valbuena Dec. ¶ 10.  The Compact became effective in 2000.  *See* 25 U.S.C. § 2710(d)(8)(D); 65 Fed. Reg. 31189, 31189 (May 16, 2000).  In 2006 the Tribe and State amended the Compact (the "2006 Amendment").  *See* Complaint Ex. 2; Valbuena Dec. ¶ 10.

The Compact requires the Tribe to maintain a Tort Liability Ordinance as a tribal law.  *See* Compact § 10.2(d)(ii) (Complaint Ex. 2, p. 73 of 97).  The Compact provides that the Ordinance is to incorporate standards from California tort law as tribal law, but it does not make such State law directly applicable or enforceable outside of the Ordinance.  The Compact provides that the Tribe is not to raise sovereign immunity as a defense to claims within the Ordinance's scope. *See* Compact § 10.2(d)(i) (Complaint Ex. 2, p. 72 of 97).  The Compact expressly recognizes the Tribe's right to require exhaustion of tribal remedies in the Ordinance: "[t]he Ordinance may require that the claimant first exhaust the Tribe's administrative remedies, if any, for resolving the claim ...."  Compact § 10.2(d)(ii)(D) (Complaint Ex. 2, p. 74 of 97).

3

**D.     San Manuel Indian Bingo & Casino**

The Tribe created the Casino to generate revenue for the tribal government's programs and to promote tribal self-sufficiency and self-determination.  *See* 25 U.S.C. § 2702(1).  The Tribe's revenues from the Casino are used exclusively for the five governmental purposes mandated by Congress:  "(i) to fund tribal government operations or programs; (ii) to provide for the general welfare of the Indian tribe and its members; (iii) to promote tribal economic development; (iv) to donate to charitable organizations; or (v) to help fund operations of local government agencies." 25 U.S.C. § 2710(b)(2)(B).  *See* Valbuena Dec. at ¶ 11.

The Casino is a governmental economic development project of the Tribe, wholly owned by the Tribe entirely on the Tribe's Reservation.  The Tribe operates the Casino through an unincorporated tribal governmental instrumentality called the San Manuel Entertainment Authority ("Authority").  *See* Valbuena Dec. at ¶¶ 6, 9.  The Casino provides the primary source of governmental revenue to the Tribe, providing funding for housing, health care, elderly services, education, law enforcement, fire safety and other vital tribal governmental programs.  The Casino has been and remains vitally important to the Tribe's ability to function as a government and to provide for the health and welfare of its tribal members.  The Casino generates virtually 100% of the Tribal government's operating budget annually.  *See id.* at ¶ 11.  The Casino and the Tribe have separate federal tax identification numbers.  Management of the Casino is separate from the management of the Tribe.  *See id.* at  ¶ 9; Lawrence Dec. Ex. 1, pp. 8-9.

**E.  The San Manuel Gaming Facility Tort Liability Ordinance**

The Tribe adopted the San Manuel Gaming Facility Tort Liability

4

Ordinance in compliance "with Section 10.2(d) of the ... Compact."  Ordinance §

15.2.  A true and correct copy of the Ordinance is Exhibit 1 to the Valbuena Dec.

The Ordinance's Statement of Purpose provides that "[t]he Ordinance shall be

strictly construed to provide a process for the consideration and evaluation of

claims brought by persons claiming to have suffered injury, and ***applies only to

those activities undertaken by the Gaming Operation or its employees*** which

occur in the Gaming Facility or in connection with the tribe's Gaming Operation

...."  Ordinance § 15.2 (Ex. 1 to Valbuena Dec.) (emphasis added).[1]

The "Tribal Dispute Resolution Process" is defined as "the Tribe's

administrative remedies for resolving a claim, as set forth in Section 15.10 of this

Ordinance."  Ordinance § 15.3.17.  The Ordinance requires that "Tort claims

against the Gaming Operation shall be initially pursued solely through the Tribe's

Dispute Resolution Process under this Ordinance.  ***A claimant must first exhaust

the Tribe's administrative remedies in accordance with this Ordinance***."  *Id.* §

15.5.2 (emphasis added).

Plaintiff Joseph Harris never filed a tort claim under the Ordinance.  *See*

Macias Dec. at ¶ 3.

The Ordinance provides that the "Tribe has not waived, and does not hereby

waive, its immunity or that of the Gaming Operation from suit in state or federal

court for any purpose other than as expressly set forth in Section 15.5.3.1 herein."

Ordinance § 15.5.2.  Section 15.5.3.1 provides a narrow, limited waiver of

sovereign immunity: the "Tribe grants a limited waiver of its right to assert

sovereignty only with respect to the arbitrator's jurisdiction and in any action

---

[1]The Ordinance defines "Gaming Operation" as "the Tribe's governmental gaming
project which offers and operates class III gaming activities ... and which project shares all
aspects of the Tribe's sovereign immunity."  *Id.* § 15.3.10 (Ex. 1 to Valbuena Dec.).

1  brought in [federal court] ... to (1) enforce the parties' obligation to arbitrate, (2)

2  confirm, correct, modify or vacate the arbitral award rendered in the arbitration, or

3  (3) enforce or execute a judgment based upon the [arbitrator's] award." *Id.* §

4  15.5.3.1.  No arbitration has occurred in this case, nor could it, given that plaintiff

5  never filed a tort claim under the Ordinance, *see* Macias Dec. ¶¶ 3-4, and that

6  plaintiff's claims are for wrongful termination from tribal employment.  *See*

7  Complaint ¶ 7.

8         The Ordinance expressly bars claims for intentional torts, *see* Ordinance §

9  15.6.1, punitive or exemplary damages, *see id.* § 15.6.2, claims for attorneys fees,

10  *see id.*, or awards for pain and suffering untethered to actual damages.  *See id.* §

11  15.6.3.

12        The Ordinance requires that "[a] claimant must first exhaust the Tribal

13  Dispute Resolution Process."  Ordinance § 15.9; *see id.* § 15.5.2.  "If a claimant is

14  dissatisfied with the decision under the Tribal Dispute Resolution Process, the

15  claimant is entitled to arbitrate his or her claim before a retired judge."  *Id.* § 15.9.

16  The Ordinance sets out the "Tribal Dispute Resolution Process" at section 15.10,

17  which includes a "Claims Administrator Process," *id.* § 15.10.1, followed by a

18  "Gaming Commission Process," *id.* § 15.10.2, and ultimately an "Arbitration

19  Process."  *Id.* § 15.11.

20        Consistent with the Compact, the Ordinance provides "Principals of Law"

21  that are "Applicable to Determinations of Claims."  *Id*. § 15.12.  Those principles

22  are found in "California tort law .....", provided that those principles "***shall be***

23  ***determined in accordance with Tribal law***."  *Id*. (emphasis added).  Also,

24  consistent with the Compact's policy regarding the Casino's use of insurance to

25  redress patron tort claims, the Ordinance provides that "Neither execution,

26  attachment, seizure, forfeiture, garnishment, nor any other method or form of

27

28                                          6

collection or enforcement of award of judgment shall issue against the Gaming Operation, the Gaming Commission, the Tribe, any tribal member, official, officer, employee or agent in any claim for injury or proceedings under this Ordinance." *Id.* § 15.13.

## F.     The Tribe's Department of Public Safety

The Department of Public Safety ("DPS") is a tribal governmental department, and is not a Casino department.  *See* Valbuena Dec.  ¶ 7.  The Director of the Department of Public Safety, and all employees in that Department – including plaintiff when he worked for the Tribe – are employed by the Tribe, not the Casino.  As the National Labor Relations Board, Region 31 recently found, "the Department of Public Safety ... is a department of the Tribe – and not a department of the Casino."  Lawrence Dec. Ex. 1, p. 9.  The DPS's offices are at 101 Pure Water Drive, which is on the private, non-public area of the Reservation.  *See* Valbuena Dec. ¶ 7; Klein Dec. ¶ 4; Lawrence Dec. Ex. 1, p. 9.

The DPS divided into five divisions, with a captain or assistant director being responsible for each division, except for the Director's Office, which the Director of DPS heads.  The other divisions and their functions are: the administrative division (where dispatch, fleet maintenance, evidence, radios and cadets are overseen); the training division (which trains DPS staff); the patrol division (which is responsible for the safety and security of tribal members as well as visitors and guests when they are outside the Casino); and the Casino division (charged with protecting the assets of the Casino and the safety of guests and Casino employees).  *See* Klein Dec. at  ¶ 5; Lawrence Dec. Ex. 1, p. 9.  DPS employees can move between different divisions.  *See* Klein Dec. ¶¶ 6, 7, 9, 17; Lawrence Dec. Ex. 1, pp. 10-11.

The DPS's Casino division protects guests and assets inside the Casino, including the Casino building itself.  The patrol division protects tribal members and guests, and their property, outside of the Casino, including protecting the integrity of the Reservation's secured, non-public areas as well as the well-being of tribal members while they are on the Reservation, including in their residences. *See* Klein Dec. ¶¶ 5, 12-16; Lawrence Dec. Ex. 1, p. 13-14.

The DPS employs Public Safety Officers ("PSOs"), who operate much like a community police department but with less authority over non-tribal members in criminal matters.  *See* Klein Dec. ¶ 14.  PSOs in the patrol division also enforce tribal ordinances on the Reservation, both with regard to tribal members and guests.  In addition, PSOs in the patrol division serve as bailiffs in the tribal court, respond to residence alarms, act as process servers, and protect ingress and egress for tribal facilities.  *See* Klein Dec. ¶¶ 14-15; Lawrence Dec. Ex. 1, pp. 14-15.  The Director of DPS reports to the Tribal Chairperson, the Business Committee and the Tribal Administrator.  *See* Klein Dec. ¶¶ 16, 19; Lawrence Dec. Ex. 1, p. 16.

The Tribe, not the Casino, issues paychecks for PSOs.  The Tribe's General Council, not Casino management, determines PSO qualifications.  The DPS Director makes hiring, discipline, and firing decisions regarding PSOs.  PSO wage rates and the overtime policy are identical regardless of the division assignment.  With regard to overtime, PSOs may request overtime in any DPS division.  Wages, health insurance, and other benefit costs for PSOs are included within the tribal government budget regardless of the PSO's division assignment.  *See* Klein Dec. ¶¶ 3, 10-11; Valbuena Dec. ¶¶ 7, 9; Lawrence Dec. Ex. 1, p. 12.

By contrast, costs for employees employed by the Casino are in the Casino's budget—not in the tribal government budget.  Casino managers have no role whatsoever in hiring, disciplining or evaluating PSOs, or any role in setting terms

and conditions of the PSOs employment.  Casino managers also do not assign overall responsibilities to PSOs, do not determine whether they will work overtime, and do not determine their shifts.  Nor do Casino managers determine where within the Casino the PSOs work.  *See* Klein Dec. ¶ 18; Lawrence Dec. Ex. 1, p. 12; Valbuena Dec. ¶ 9.[2]

## G.    Plaintiff's Employment, Termination, and Appeal

The Tribe hired plaintiff as a tribal law enforcement officer on April 17, 2012.  When hired, plaintiff received a copy of the Tribe's employment policies, which he acknowledged in writing.  *See* Klein Dec. ¶ 20 and Ex. 1.  In January, 2013, the Tribe received allegations that plaintiff had violated the Tribe's employment policies.  Two tribal governmental agencies conducted independent investigations into those allegations and, as a result, the Tribe terminated plaintiff in February 2013.  *See* Klein Dec. ¶¶ 23-24.

Plaintiff appealed his termination under the Tribe's employment policies, which gave him two levels of appeal.  First, plaintiff's termination was reconsidered by his Department Director.  Second, plaintiff's termination was reviewed by the Tribe's Employee Dispute Resolution Panel ("Panel").  The termination was upheld at both stages of the appeal process.  Under the Tribe's employment policies, the Panel's decision was final.  *See* Klein Dec. ¶ 25-28; Valbuena Dec. Ex. 2, § 2.09.[3]  There is no right to sue in federal court.  There is no

---

[2]Additional background information about the structure and operation of the DPS may be found in the Klein Declaration and Exhibit 1 to the Lawrence Declaration.

[3]The Tribe has codified its employment policies and procedures in the San Manuel Employee Handbook ("Handbook").  A true and correct copy of Handbook sections 2.08 and 2.09 is attached to the Valbuena Dec. as Exhibit 2.  Section 2.08 provides tribal employees with notice that "the Tribe reserves the right to utilize any disciplinary action, up to and including

waiver of the Tribe's sovereign immunity.  *See* Valbuena Dec. ¶¶ 12-13; Klein Dec. ¶ 22.  Thus, under the Tribe's employment policies, plaintiff exhausted his right to appeal his termination and has no further remedy.

### III.  DISCUSSION

**A.     Plaintiff Bears the Burden of Establishing Jurisdiction**

A motion to dismiss on tribal sovereign immunity grounds is generally brought under Rule 12(b)(1).  *See Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort,* 629 F3d 1173, 1177 (10th Cir. 2010); *Lewis v. Norton,* 424 F3d 959, 961  (9th Cir. 2005).  Plaintiff bears the burden of proving that the court has jurisdiction.  *See Kokkenen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *In re Wilshire Courtyard,* 729 F3d 1279, 1284  (9th Cir. 2013).  Plaintiff also "bears the burden of showing a waiver of tribal sovereign immunity." *Ingrassia v. Chicken Ranch Bingo and Casino*, 676 F.Supp.2d 953, 956 (E.D. Cal. 2009).

Because the court's power to hear the case is at stake, it is not limited to considering the complaint's allegations.  It may consider extrinsic evidence.  If the evidence is disputed, it may weigh the evidence and determine the facts in order to determine its power to hear the case: "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F3d 1173, 1177 (9th Cir. 1987).  "[A] Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in doing so rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d

---

termination, as it deems appropriate," and that the "Tribe may terminate an employee for any offense that it deems a violation of a Tribal policy ...."  *Id.*   Section 2.09 provides the two-stage Dispute Resolution Procedure noted above.

199, 201 (9th Cir.1989).

Where the Rule 12(b)(1) motion is supported by extrinsic evidence, no presumptive truthfulness attaches to plaintiff's allegations: "The presumption of correctness that we accord to a complaint's allegations falls away on the jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into question." *Commodity Trend Service, Inc. v. Commodity Futures Trading Comm'n,* 149 F3d 679, 685 (7th Cir. 1998); *Center for Biological Diversity, Inc. v. BP America Production Co*., 704 F3d 413, 421 (5th Cir. 2013). *See Thornhill Pub. Co. v. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

**B.     California's Employment Laws Do Not Apply to the Tribe on its Reservation**

Plaintiff sues for wrongful termination under California law.  *See* Complaint ¶¶ 29-31.  But California's employment laws and policies do not apply to the Tribe acting on its federal Reservation.  "State laws generally are not applicable to tribal Indians on an Indian reservation except where Congress has expressly provided that State laws shall apply." *McClanahan v. State Tax Comm'n of Arizona*, 411 U.S. 164, 170-71 (1973).  Indeed, the Supreme Court has long held that states lack regulatory authority in Indian country as to tribal conduct.  *See, e.g. The Kansas Indians*, 72 U.S. 737 (1867); *Worcester v. Georgia*, 31 U.S. 515 (1832).  "The policy of leaving Indians free from state jurisdiction and control is deeply rooted in the Nation's history." *Rice v. Olson*, 324 U.S. 786, 789 (1945).  Thus state law generally is not applied to Indian affairs within the territory of an Indian tribe, absent Congress' consent.  *See Worcester*, 31, U.S. at 561-62; *The Kansas Indians*, 72 U.S. at 755-57; *United States v. Kagama*, 118 U.S. at 384-85.  *See also* F. Cohen, Handbook of Federal Indian Law § 6.01[2].  "A state ordinarily may not regulate the property or conduct of tribes ... in Indian country." *Id.* at § 6.03[1][a].

11

"[A]bsent governing Acts of Congress, a State may not act in a manner that infringed on the right of reservation Indians to make their own laws and be ruled by them." *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 332-33 (1983) (internal quotations omitted). "State jurisdiction is pre-empted ... if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the state interests at stake are sufficient to justify the assertion of state authority." *California v. Cabazon Band*, 480 U.S. 202, 216 (1987) (internal quotations omitted). This "inquiry ... proceed[s] in light of traditional notions of Indian sovereignty and the congressional goal of Indian self-government, including its overriding goal of encouraging tribal self-sufficiency and economic development." *Id.* (internal quotations omitted). In *Cabazon*, even though California had Penal Code prohibitions against gambling, the Court nevertheless found the Tribe's interest in self-sufficiency and economic development outweighed the State's interests in its gambling laws. *Cabazon* was "the seminal Indian gaming case that ultimately led to the passage of IGRA," which, as noted above, preempts the field of tribal government gaming and expressly authorized the Tribe and State to regulate tribal gaming through the Compact mechanism. *Rumsey Indian Rancheria of Wintun Indians v. Wilson*, 64 F.3d 1250, 1254 (9th Cir. 1994) *opinion amended on denial of reh'g*, 99 F.3d 321 (9th Cir. 1996). *See* 25 U.S.C. § 2710(d)(3). Plaintiff's attempt to apply California employment law to the Tribe, with respect to tribal government employees who enforce tribal law on the Reservation, would plainly interfere with "the right of reservation Indians to make their own laws and be ruled by them." *Mescalero*, 462 U.S. 324, 332-33 (1983).

**C.    Tribal Sovereign Immunity May Only Be Waived by Express and Unequivocal Terms**

Absent an express waiver of sovereign immunity, courts may not exercise

12

jurisdiction over federally recognized Indian tribes.  *See Puyallup Tribe, Inc. v. Dep't of Game*, 433 U.S. 165, 172 (1977); *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1015-16 (9th Cir. 2007).  "Suits against Indian tribes are ... barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation."  *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991).  *See A.K. Mgmt. Co. v. San Manuel Band of Mission Indians*, 789 F.2d 785, 789 (9th Cir. 1986).

"There is a strong presumption against waiver[s] of tribal sovereign immunity."  *Demontiney v. United States*, 255 F.3d 801, 811 (9th Cir. 2001).  Because preserving tribal resources and tribal autonomy are vital matters of federal Indian policy, the Supreme Court has repeatedly stated that a waiver of tribal sovereign immunity "cannot be implied but must be unequivocally expressed."  *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58-59 (1978); *see United States v. Testan*, 424 U.S. 392, 399 (1976); *United States v. King*, 395 U.S. 1, 4 (1969).  *See also Kescoli v. Babbitt*, 101 F.3d 1304, 1310 (9th Cir. 1996).

Tribal sovereign immunity extends to arms of the Tribe, including the Tribe's Casino.  *See Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 755 (1998); *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006) ("This immunity extends to business activities of the tribe, not merely to governmental activities"); *American Vantage Cos., Inc. v. Table Mountain Rancheria*, 292 F.3d 1091, 1100 (9th Cir. 2002).

Sovereign immunity is a jurisdictional bar "irrespective of the merits of the claim."  *Chemehuevi Indian Tribe v. California Bd. of Equalization*, 757 F.2d 1047, 1051 (9th Cir. 1985), *rev'd on other grounds*, 474 U.S. 9 (1985).  *See also Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 418 (9th Cir. 1989); *California ex rel. Dep't of Fish and Game v. Quechan Tribe of Indians*, 595 F.2d

13

1153, 1155 (9th Cir. 1979); *Wendt v. Smith*, 273 F. Supp. 2d 1078, 1082 (C.D. Cal. 2003).  Sovereign immunity bars both contract and tort actions.  *See Pit River Home and Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1100 (9th Cir. 1994); *Great Western Casinos*, 74 Cal. App.4th at 1421; *Long v. Chemehuevi Indian Reservation*, 115 Cal. App.3d 853 (4th Dist. 1981).

Sovereign immunity bars claims by former tribal employees.  "[I]t is well established precedent that claims by former tribal employees against the Tribe are barred by tribal sovereign immunity."  *Hill v. Rincon Band of Indians*, 2007 WL 2429327, No., 06CV2544, slip op. at * 5 (S.D. Cal. Aug. 22, 2007).  *See also Allen*, 464 F.3d at 1048; *Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1187 (9th Cir. 1998); *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987).

Sovereign immunity likewise bars actions based on an alleged violation of a tribal-state gaming compact.  *See Allen v. Gold Country Casino*, 2005 WL 6112668, No. S-04-322, slip op. at * 2 (E.D. Cal. Feb. 8, 2005) ("The Tribal-State Gaming Compact … does not give consent for suits against the Tribe").  A courtesy copy of the district court order in *Allen* is attached as Exhibit 2 to the Lawrence Dec. filed herewith.

Because sovereign immunity is jurisdictional in nature, its recognition by the Court is not discretionary.  *See Puyallup Tribe*, 433 U.S. at 172-73; *Quechan Tribe*, 595 F.2d at 1154-55.  "[S]overeign immunity is not a discretionary doctrine that may be applied as a remedy depending upon the equities of a given situation."  *Chemehuevi*, 757 F.2d at 1052 n.6.  "Sovereign immunity involves a right which courts have no choice, in the absence of a waiver, but to recognize."  *Pit River Home and Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1100 (9th Cir. 1994).  The Supreme Court has expressly rejected the application of equitable considerations in the context of tribal sovereign immunity.  *See Three Affiliated*

14

1  *Tribes of the Ft. Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 893 (1986).

2  *See also McClendon v. United States*, 885 F.2d 627 (9th Cir. 1989).  Accordingly,

3  even if the Complaint's substantive allegations were correct (which the Tribe

4  emphatically disputes), it would not defeat the Tribe's sovereign immunity.

5         Where a tribe does expressly waive its sovereign immunity, any limitations

6  on that waiver are strictly enforced.  *See Ramey Construction v. Apache Tribe of*

7  *Mescalero Reservation*, 673 F.2d 315, 320 (10th Cir. 1982).  A waiver of sovereign

8  immunity "will be strictly construed, in terms of its scope, in favor of the

9  sovereign." *Lane v. Peña*, 518 U.S. 187, 192 (1996).  *See also Block v. North*

10  *Dakota*, 461 U.S. 273, 287 (1983); *Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76,

11  90 (2d Cir. 2001); *Rupp v. Omaha Indian Tribe*, 45 F.3d 1241, 1245 (8th Cir.

12  1995); *Fed. Nat'l Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989);

13  *Terrell v. United States*, 783 F.2d 1562, 1565 (11th Cir. 1986); *McDonald v.*

14  *Illinois*, 557 F.2d 596, 601 (7th Cir. 1977).  Thus, a court may exercise jurisdiction

15  over a tribal government only pursuant to a clear statement from the tribal

16  government "waiving [its] sovereign immunity . . . together with ***a claim falling***

17  ***within the terms of the waiver***." *United States v. White Mountain Apache Tribe*,

18  537 U.S. 465, 472 (2003) (emphasis added).

19         These settled legal principles apply both to the interpretation of the scope of

20  the government's waiver of immunity and to the interpretation of any limitations on

21  that waiver.  *Id.*  Where a tribe limits its waiver of immunity by specifying the

22  conditions under which it consents to suit and the procedures that must be followed

23  for its waiver to be effective, a court will construe the waiver narrowly and allow

24  suits only pursuant to the specified conditions and procedures.  *See Omaha Tribe*,

25  267 F.3d at 852.  Thus it is well settled that waivers of sovereign immunity may be

26  limited to specific conditions and procedures. *See, e.g.*, *Pennhurst State School &*

27

28
                                            15

1   *Hosp. v. Halderman*, 465 U.S. 89, 99 (1984); *United States v. Shaw*, 309 U.S. 495,

2   501 (1940); *Minnesota v. United States*, 305 U.S. 382, 388 (1939); *Montana v.*

3   *Gilham*, 133 F.3d 1133, 1138 (9th Cir. 1998).  This principle is of particular

4   relevance here, for while the Compact contains a limited immunity waiver, it does

5   not apply to plaintiff or this case, as the following discussion demonstrates.

6

7   **D.   The Compact is Only Enforceable by the State and Tribe**

8        Plaintiff incorrectly claims that the Tribe's Compact section 10.2(d)(ii)

9   grants him a sovereign immunity waiver and right to sue.  *See* Complaint ¶¶ 3-4.

10  The problem for Plaintiff, however, is that the Compact is only enforceable by the

11  Tribe and the State.   Plaintiff is neither a party to, nor a named third-party

12  beneficiary of, the Compact.  He lacks the right and ability to sue under the

13  Compact.  There is no express and unequivocal waiver of sovereign immunity in

14  the Compact that allows a private third party, such as Plaintiff, to sue the Tribe for

15  wrongful termination.

16       The Complaint quotes a single paragraph, out of context, from Compact

17  section 10.2(d).  *See* Complaint ¶¶ 3-4.  Read in its entirety, Compact section

18  10.2(d) plainly requires that the Tribe enact a "Tort Liability Ordinance...."

19  Compact § 10.2(d)(ii) (Complaint Ex. 2, Doc. 1, p. 73 of 97).  The Compact

20  provides four requirements to be included in that tribal law.  *See id.* at §

21  10.2(d)(ii)(A)-(D) (Complaint Ex. 2, Doc. 1, p. 73-74 of 97).  The limited waiver of

22  tribal sovereign immunity quoted in the Complaint is plainly linked to, and limited

23  by, that tribal Tort Liability Ordinance, providing that in order "to effectuate the

24  insurance coverage, the Tribe shall waive its right to assert sovereign immunity up

25  to the limits of the [insurance] Policy *in accordance with the tribal ordinance*

26  *referenced in subdivision (d)(ii) below* ...."  *See id.* at § 10.2(d)(i) (Complaint Ex.

27

28

2, Doc. 1, p. 72 of 97) (emphasis added).   It is the Tribe's Gaming Facility Tort Liability Ordinance, not the Compact, that provides Casino patrons and vendors with a remedy for torts allegedly caused by the Casino.

The Compact does contain a limited waiver of sovereign immunity of both the Tribe and the State of California.  Section 9.4(a) provides that "[i]n the event that a dispute is to be resolved in federal court ..., the State and the Tribe expressly consent to be sued therein and waive any immunity therefrom that they may have provided that" certain conditions exist. *Id.* § 9.4(a).

A key condition limiting the mutual sovereign immunity waiver is that ***"[n]o person or entity other than the Tribe and the State is a party to the action***, unless failure to join a third party would deprive the court of jurisdiction; provided ***that nothing herein shall be construed to constitute a waiver of the sovereign immunity of either the Tribe or the State in respect to any such third party***." Compact section 9.4(a)(3) (Complaint Ex. 1, p. 43 of 97) (emphasis added).

Moreover, the Compact provides that "[i]n the event of intervention by any additional party into any such action without the consent of the Tribe and the State, ***the waivers of either the Tribe or the State provided herein may be revoked***, unless joinder is required to preserve the court's jurisdiction; provided that ***nothing herein shall be construed to constitute a waiver of the sovereign immunity of either the Tribe or the State in respect to any such third party***."  Compact § 9.4(b) (Complaint Ex. 1, p. 43 of 97) (emphasis added).  The compact's limited immunity waiver is also premised on the condition that there is no "claim for monetary damages ...."   Compact § 9.4(a)(2) (Complaint Ex. 1, p. 43 of 97).

Finally, Compact section 15.1 provides that "[e]xcept to the extent expressly provided under this [Compact], this [Compact] is not intended to, and ***shall not be construed to, create any right on the part of a third party to bring an action to***

17

1  *enforce any of its terms*.”  *Id*. § 15.1 (Complaint Ex. 1, p. 50 of 97) (emphasis

2  added).  The Compact expressly makes “non-compact tribes” third party

3  beneficiaries of the revenue sharing trust fund created thereunder.   *See* Compact §

4  4.3.2(a)(i) (Complaint Ex. 1, p. 23 of 97).  By contrast, the Compact does not make

5  tribal employees third party beneficiaries.

6        In *Allen v. Gold Country Casino*, a former tribal casino employee sued,

7  alleging wrongful termination.  *See Allen v. Gold Country Casino*, 2005 WL

8  6112668, No. S-04-322, slip op. at * 1 (E.D. Cal. Feb. 8, 2005), *aff'd* 464 F.3d

9  1044 (9th Cir.  2006).  *See* Lawrence Dec. Ex. 2.  The employee alleged that “[t]he

10  Tribe waived its immunity by virtue of ‘employment rights allowed or referred to

11  (sic) by defendants in numerous documents and signed state-tribal gaming

12  compacts.’”  *Id.* at *2.  The court noted that to “waive its sovereign immunity, a

13  tribe must expressly and clearly state such intent.”  *Id.*  It explained that the

14  "Tribal-State Gaming Compact (hereinafter Compact) ***does not, as plaintiff***

15  ***alleges, give consent for suits against the Tribe***.  The Compact expressly states

16  that ‘nothing herein shall be construed to constitutes a waiver of the sovereign

17  immunity of either the Tribe or the State in respect to any ... third party.’”  *Id.*

18  (emphasis added).  *See also Keitt v. WCAB*, 2012 WL 1511707 (4th DCA April 18,

19  2012) (“by its express language, the Compact stated that it should not be construed

20  to effect a waiver of sovereign immunity with respect to any third party”).

21        Thus, plaintiff lacks an applicable immunity waiver, and lacks a right to sue,

22  under the Compact.

23

24

**E.     The Tribe’s Gaming Facility Tort Liability Ordinance Does Not Afford
         Plaintiff Any Relief**

25

26        The Tribe’s Gaming Facility Tort Liability Ordinance (“Ordinance”) is of no

27  help to plaintiff, for a host of reasons.  First, rather than expressly encompassing

28

                                        18

employee claims of wrongful termination, the Compact instead directs the
Ordinance to tort claims by patrons and vendors of the Casino.  *See*  Compact §
10.2(d)(i) (Complaint Ex. 2, p. 72 of 97).  Second, the Ordinance does not apply to
tort claims against the ***Tribe***, but instead is limited to claims of tortious wrongdoing
by the ***Casino***.  *See* Compact § 10.2(d)(i) (Complaint Ex. 2, p. 72 of 97); Valbuena
Dec. ¶ 12 and Ex. 1 §§ 15.2, 15.5.1.  Since plaintiff was employed by the Tribe and
not the Casino, *see* Valbuena Dec. ¶ 7; Klein Dec. at  ¶¶ 4, 9-11, 19, 20, 28;
Lawrence Dec. Ex. 1, pp. 20, even if the Ordinance did cover employee claims, it
would not cover employees of the tribal government.   As noted, plaintiff's sole
remedy for employment-related grievances is found in the Tribe's personnel
policies codified in the Employee Handbook.  *See* Valbuena Dec. ¶ 13 and Ex. 2, §
2.09; Klein Dec. ¶¶ 22-28.  Third, plaintiff failed to file a claim under the
Ordinance, which is a prerequisite to any relief thereunder.  *See* Macias Dec. ¶ 3.
Fourth, the Ordinance provides for a mandatory Tribal Dispute Resolution process,
which plaintiff never exhausted.  *See id*. ¶ 4.  His exhaustion of the appeals process
under the Tribe's employment policies did not exhaust the requirements for tort
claims under the Ordinance.  Fifth, the Ordinance does not permit claims for
punitive damages or attorneys fees, both of which the Complaint seeks.  *See*
Ordinance § 15.6.2; Complaint, Prayer for Relief ¶¶ 3-5.  Finally, the Ordinance
only allows for Tribal Dispute Resolution, then Gaming Commission review, and
finally arbitration of tort claims against the Casino, not lawsuits in federal court for
damages.  *See* Ordinance § 15.10-11.


**F.    Plaintiff's Theory Would Render The State of California a Necessary
and Indispensable Party under Rule 19**

        Plaintiff's theory, that the Compact waives sovereign immunity to allow
third party suits, would render the State a Required part under Federal Rule of Civil

Procedure 19.  It is well settled that a party to a contract, such as the Compact here, is a required party under Rule 19.  Where such a contracting party has sovereign immunity, as the State of California does under the Eleventh Amendment to the United States Constitution, the case must be dismissed in the required party's absence.  *See, e.g., American Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002) (Indian tribes with gaming compacts were necessary and indispensable parties); *Clinton v. Babbitt*, 80 F.3d 1081 (9th Cir. 1999); *Enterprise Management Consultants, Inc. v. Hodel*, 883 F.2d 890 (10th Cir. Aug. 28, 1989) (tribe was indispensable party to action seeking review of bingo management contracts); *Lomayaktewa v. Hathaway*, 520 F.2d 1324 (9th Cir. 1975) (parties to a contract are indispensable, and where they are governments possessing sovereign immunity, dismissal is required); *Dewberry v. Kulongoski*, 406 F.Supp.2d 113 (D. Or. 2005) (Indian tribe was indispensable party to suit challenging validity of its gaming compact with state); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 327 F.Supp.2d 995 (W.D. Wisc. 2004), *aff'd* 422 F.3d 490 (7th Cir.  2005) (State and tribe who were parties to a gaming compact were indispensable parties who could not be joined as parties, requiring dismissal even though plaintiffs would have no remedy; parties to the compact had sovereign immunity and any judgment touching on the compact would be prejudicial to their interests).  Rule 19 provides an independent basis for dismissing this case with prejudice.

## IV. CONCLUSION

For all of these reasons, the Tribe and Casino respectfully request that the Court dismiss this lawsuit with prejudice.

Dated: February 25, 2015

**Law Office of Frank Lawrence**
By _____/s/_____
        Frank Lawrence
*Attorney for Defendants San Manuel Band of Mission Indians and San Manuel Indian Bingo and Casino*

20